UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD SEIFERT,<br><br>      Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC<br>D/B/A MR. COOPER; LAKEVIEW<br>LOAN SERVICING, LLC, ALDRIDGE<br>PITE, LLP; SYDNEY K LEAVITT;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.<br>(MERS); and DOE DEFENDANTS 1-10,<br><br>      Defendants. | Case No. 4:25-cv-00645-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") and Lakeview Loan Servicing, LLC's (together, "Nationstar Defendants") Motion to Dismiss. Dkt. 20.[1] The Nationstar Defendants filed this Motion on April 27, 2026, meaning Plaintiff Richard Seifert had until May 18, 2026, to file a response. He failed to do so. On May 21, 2026, however, Seifert filed a Motion for Extension asking that he be permitted to respond by June 10, 2026. Dkt. 23. The Court granted Seifert his requested extension. Dkt. 24. Seifert has still not filed a response.

---

[1] The Nationstar Defendants also filed a Motion to Take Judicial Notice asking the Court to consider—to the extent necessary—the underlying loan documents. Dkt. 21. As the Court previously held, *see* Dkt. 15, at 8–9, because Seifert references the loan documents in his filings, it is appropriate to take judicial notice of the same. The Motion is GRANTED.

MEMORANDUM DECISION AND ORDER – 1

Upon review, and for the reasons set forth below, the Court GRANTS Defendants' Motion and dismisses Seifert's Complaint WITH PREJUDICE and WITHOUT LEAVE TO AMEND.[2]

## II. BACKGROUND

The Court has previously described the background of this case in detail (Dkt. 15, at 2–3) but will reiterate the pertinent points here for context. Seifert initially filed a 206-page Complaint which contained fifty-five causes of action. Dkt. 1-2. His claims were extremely diverse, encompassing federal and state statutory claims as well as common law claims and claims for equitable relief. *See generally id*. Most of his claims have no connection to mortgage servicing.

A discerning eye may (upon hours of study) learn that this suit essentially boils down to a mortgage servicing dispute. Seifert alleges he obtained a Federal Housing Administration ("FHA") insured mortgage loan secured by real property at 113 5th Street, Idaho Falls, Idaho, 83401 in May of 2024. Seifert initially made payments on the loan, but his last payment—a partial payment—occurred in January 2025. At that point, The Nationstar Defendants began default proceedings.

Seifert alleges he was later approved for a loan modification in July 2025 but claims Defendants improperly scheduled a foreclosure sale on the property for October of 2025, while his modification was still pending. This is partially true.

---

[2] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Nationstar did approve a modification for Seifert and mailed him certain documents in July of 2025 to get his final approval. The requested return deadline was August 15, 2025. Under the modification, Seifert's monthly mortgage payment would have decreased. That said, by his own admission, even this lesser amount was "not affordable" and so Seifert never returned or executed the modification documents. Dkt. 19, at 16–17. Thus, the Nationstar Defendants continued with default and foreclosure proceedings.

Seifert sued in Idaho state court, and the Nationstar Defendants subsequently removed the case to this Court in November 2025. Dkt. 1.

On December 17, 2025, the Nationstar Defendants and MERS filed Motions to Dismiss. Dkts. 11, 12. The next day, the Court sent Seifert its standard Notice to Pro Se Litigants informing him of Defendants' Motions and what was required in response. Dkt. 14. After Seifert failed to respond, the Court granted the Motions to Dismiss on February 12, 2026, but gave Seifer leave to amend his Complaint. Dkt. 15. Notably, the Court specifically directed Seifert to adhere to Rule 8's pleading standard by filing a *short and plain* Complaint. *Id*. at 10.

One day before the deadline to file an amended Complaint, Seifert requested an extension until April 15, which the Court granted. Dkts. 16, 18. Seifert then filed his *seventy-two page* Amended Complaint on April 14 (Dkt. 19), and the Nationstar Defendants filed a new Motion to Dismiss on April 27. Dkt. 20.

Seifert then missed the May 18 deadline to respond and followed up by requesting another extension, which the Court again granted, setting a new deadline of June 10 (the date Seifert requested in his Motion). Dkts. 23, 24.

MEMORANDUM DECISION AND ORDER – 3

To date, Seifert has again failed to file any response to the Nationstar Defendants' most recent Motion to Dismiss.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Where a plaintiff is proceeding pro se, the complaint must be liberally construed, and he must be given the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave

MEMORANDUM DECISION AND ORDER – 4

to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 567 (N.D. Cal. 2019) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). The decision is within the discretion of the trial court.

## IV. ANALYSIS

As explained previously, the Court first finds procedural grounds exist for granting the Nationstar Defendants' Motion. Dkt. 15, at 4–5. Just as the case was when Seifert failed to respond to the Nationstar Defendants' previous Motion to Dismiss, Seifert has again failed to timely respond to the new Motion to Dismiss—even though this most recent deadline was one that he himself proposed and the Court accepted. Seifert knew the consequences of failing to respond in this case, because the Court made sure he did.[3] Despite this knowledge, he has not filed any response.

This alone is enough to dismiss the case, and now with prejudice, as it would be the second dismissal. However, in the interest of completeness, the Court will briefly explain why Seifert's Amended Complaint must be dismissed even were there no procedural grounds for dismissal.

### A. Shotgun Pleading

Aside from Seifert's apparent neglect of this case, when the Court granted him leave to amend his Complaint after the first dismissal, it specifically instructed him to

---

[3] As mentioned in the Court's previous Order, the Clerk of the Court sent Seifert the District of Idaho's standard Notice to Pro Se Litigants outlining what was required of him and making him aware that his case could be dismissed if he failed to respond on time, pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 7.1(e)(2).

MEMORANDUM DECISION AND ORDER – 5

significantly reduce the Complaint's length to make it clear what he was alleging against which defendants. *See* Dkt. 15, at 10.

The Court's instruction that Seifert should indicate specifics about who did what and why what they did was wrong was not a simple suggestion; it was a direction aimed at *helping* Seifert to create a cogent set of claims.

However, Seifert has largely maintained the same methodology of shotgun pleading. The issues with the Amended Complaint are numerous, but specifically, Seifert engages in shotgun pleading by making conclusory and vague allegations and intermingling multiple causes of action into the same counts. *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (explaining how shotgun pleading violates Rule 8 by, among other things, failing to separate claims into different counts and making vague and conclusory allegations).

To Seifert's credit, he reduced the length of his Complaint significantly—from 206 pages to seventy-two, and from fifty-five causes of action to nine. He also tried to distinguish between the Defendants with some of the counts.

Nevertheless, the Amended Complaint still suffers from the same maladies as the original Complaint. Rather than refining his Amended Complaint to indicate specific acts that gave rise to specific causes of action against specific defendants, Seifert has merely consolidated most or all of the same information from his fifty-five original causes of action into nine omnibus causes of action, which mostly make vague and generic allegations of wrongdoing against the Defendants. This approach is impermissible and supports dismissal.

MEMORANDUM DECISION AND ORDER – 6

### B. Lack of Cognizable Legal Theory

Defendants next assert Seifert's Amended Complaint must be dismissed because he has not alleged any plausible causes of action. Under the circumstances, the Court agrees.

A plaintiff's complaint may be dismissed if it "lack[s] . . . a cognizable legal theory" upon which a court may grant relief. *Johnson*, 534 F.3d at 1121. Here, the Amended Complaint fails to state any legal theories upon which Seifert could recover.[4] The Court will briefly explain why each of Seifert's causes of action lacks a cognizable legal theory.

#### 1. Real Estate Settlement Procedures Act ("RESPA")/Regulation X Claim (Count 1)

Under RESPA, mortgage servicers may not simultaneously advance a foreclosure while evaluating a borrower's loss mitigation or loan modification application unless one of the exceptions from 12 C.F.R. § 1024.41(f) applies.

One of the exceptions applies here. Section 1024.41(f)(2)(ii) stipulates that the dual-tracking prohibition does not apply if the borrower rejects the loss mitigation options offered by the loan servicer, which is exactly what happened in this case. Following the loan modification process, Seifert himself states he declined the terms proposed by Nationstar because he still could not afford to pay the modified amount.

Because Seifert rejected the loss mitigation options offered by Nationstar, the dual-tracking prohibition does not apply. Accordingly, Nationstar had the right to maintain

---

[4] The Court noted in its previous Order that Seifert cited fabricated or hallucinated cases to support his claims in his original Complaint and instructed him to verify that any case citations in the Amended Complaint came from a recognized legal database. *See* Dkt. 15, at 10. It appears that rather than finding precedential cases to support his claims, Seifert opted against citing to any caselaw *at all* in his Amended Complaint. This indicates Seifert either could not find any cases that support his propositions or that he did not try to do so. Either way, his claims are unsupported by both the facts and any prevailing caselaw.

foreclosure activity, and Seifert's RESPA claim fails.

### 2. RESPA Notice of Error and Request for Information Claim (Count 2)

A plaintiff may recover for a servicer's failure to respond to notices of error and requests for information under RESPA. However, a plaintiff's allegations of a servicer's failure to respond must include specificity about his own communications, including when they were sent, to whom, why, and what the communications contained. *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015).

Here, as the Defendants point out, Seifert sets out fairly broad assertions of what he said in his communications with Nationstar. On the other hand, as Seifert explains—and indeed, under the language of the relevant code provisions here—what Seifert allegedly included in his communications was probably enough to put Nationstar on notice of the supposed error and requested information.

At bottom, it is evident from the Amended Complaint and Defendants' Motion that Seifert failed to allege *when* he sent the communications. In fact, Seifert merely said that he sent "one or more" communications, so it would seem that even he is uncertain of when or how many letters were sent.

Even if Seifert had more accurately identified his communications, he has not alleged any cognizable harm and resulting damages. Simply put, there is no harm that would not have otherwise occurred but for the alleged failure of Nationstar in responding to his communications. Because of this, Seifert's second claim fails.

### 3. Truth in Lending Act ("TILA") Claim (Count 3)

Mortgage servicers must promptly credit periodic payments to consumer loan

accounts. 15 U.S.C. § 1639f(a). Periodic payments are defined as "amount[s] sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(ii).

Here, Seifert alleges (and Nationstar agrees) he paid $1,761.50 in January of 2025. The minimum monthly payment on his loan was $1,987.29. Seifert further alleges that even if his payment is not considered a periodic payment subject to the prompt crediting requirement, "Nationstar was still required to handle that payment in the manner prescribed by Regulation Z." Dkt. 19, at 30. That said, Seifert does not explain how or why the partial payment should have been applied to his account rather than being held in suspense, especially when the very same code provision dictates that partial payments may be held in suspense. Nationstar was, therefore, within its right *not* to apply the payment to Seifert's account.

In sum, Seifert's argument is unsupported by the law, so his TILA claim fails.

### 4. *Wrongful Foreclosure Claim (Count 4)*

Seifert alleges Defendants engaged in a wrongful foreclosure of the property in question, in that the successor trustee was not appointed in compliance with Idaho law. Specifically, Seifert alleges that "no valid and timely recorded substitution of trustee had been executed and recorded." Dkt. 19, at 34. These allegations fail for two reasons.

First, Idaho does not recognize attempted wrongful foreclosure. Wrongful foreclosure is likened to conversion under Idaho law, in that it does not become actionable until a foreclosure sale has actually been *completed*. *See Houpt v. Wells Fargo Bank, Nat. Ass'n*, 370 P.3d 384, 393 (Idaho 2016).

MEMORANDUM DECISION AND ORDER – 9

Second, Seifert's claim that the successor trustee was not appointed in compliance with Idaho law is controverted by public records. As Defendants point out, the successor trustee's appointment was recorded on April 23, 2025, demonstrating that the appointment was in fact done in compliance with Idaho law.

For these reasons, Seifert's wrongful foreclosure claim fails as a matter of law.

### 5. Idaho Consumer Protection Act ("ICPA") Claim (Count 5)

To recover for deceptive practices under the ICPA, a plaintiff must "allege which specific prohibited unfair or deceptive practice" from the list of prohibited conduct in Idaho Code § 48-603 the defendant engaged in. *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010).

Here, Seifert alleges there was an ongoing evaluation of loss mitigation at the time foreclosure proceedings commenced. Further, Seifert alleges the Nationstar Defendants accepted the partial payment as a "trial/workout payment" and subsequently categorized it as an unapplied partial payment. In sum, Seifert argues these actions constituted deceptive and unfair practices and acts.

These allegations do not correspond to any act or practice prohibited by § 48-603. Indeed, it seems Defendants were fully within their rights pursuant to the loan agreement and the aforementioned regulations to hold the partial payment in suspense and not apply it to the account, and that calling the partial payment a "trial/workout payment" does not even constitute a misrepresentation, let alone a prohibited act under the ICPA.

For these reasons, Seifert's ICPA claim fails.

MEMORANDUM DECISION AND ORDER – 10

### 6.  Implied Covenant of Good Faith and Fair Dealing Claim (Count 6)

Under Idaho law, every contract has an implied covenant of good faith and fair dealing. However, as Defendants correctly note, "a party does not breach the covenant by exercising express contractual rights." Dkt. 20, at 15 (citing *Gordon v. U.S. Bank Nat'l Ass'n*, 455 P.3d 374, 391 (Idaho 2019)).

Seifert alleges that his partial payment as well as his engagement in the loss-mitigation discussion and attempts to "correct" the proposed loan modification after he learned it was unaffordable to him were his good-faith efforts to preserve the loan and his interest in the property. Dkt. 19, at 45. Seifert further alleges that Lakeview violated the implied covenant by failing to apply the partial payment to his loan balance, "failing to ensure a clear and good-faith resolution of the workout process, and by using the contractual power of sale in a way that unfairly frustrated [Seifert's] legitimate contractual expectations." *Id*. at 47. Seifert contends that by accepting his partial payment and refusing to apply it to his loan balance, the Defendants "continued to assert a materially delinquent default position on the loan" despite his belief that the loss-mitigation process was ongoing. *Id.* at 46.

Defendants point to several provisions of the Deed of Trust that purport to authorize this conduct. Specifically, the Deed allowed the "Lender [to] accept and either apply *or hold in suspense* Partial Payments *in its sole discretion*." Dkt. 20, at 16 (emphasis added). The Deed also allowed the lender to work with Seifert "to avoid foreclosure and/or mitigate Lender's potential losses, *but is not obligated to do so* unless required by Applicable Law." *Id.* (emphasis added). In short, the alleged wrongful conduct was specifically allowed under

MEMORANDUM DECISION AND ORDER – 11

the contract, and Defendants were fully within their rights to both hold the partial payment in suspense and to initiate foreclosure proceedings.

Further, Defendants argue the implied covenant only applies to terms agreed to by the parties and "cannot inject external obligations." Dkt. 20, at 16. Defendants then argue Seifert's contention that they were obligated by the good faith covenant to ensure the loss-mitigation process was closed prior to initiating foreclosure proceedings is an attempt to inject such external obligations into the agreement. The Court agrees.

The language of the Deed is clear, in that Defendants had no obligation to credit the partial payment to the loan balance, to ensure the loss-mitigation process was fully closed, or to refrain from beginning the foreclosure process until a later time. As such, the Court finds Seifert's claim under the implied covenant fails because the evidence directly contradicts his contentions and caselaw does not support his interpretation of the applicable law.

### 7.  Promissory Estoppel Claim (Count 7)

The doctrine of promissory estoppel does not apply when the subject of a claim is governed by a written agreement. *See SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 435 P.3d 1106, 1118 (Idaho 2019).

Seifert brings his promissory estoppel claim in the alternative to his implied covenant claim. He alleges that by representing that the loss-mitigation process was open until August 15, 2025, and then proceeding to schedule a foreclosure sale for October 2, 2025, Defendants made a promise to him to remain engaged in the loss-mitigation process, upon which he relied to his detriment. He further alleges that he sustained damages due to

MEMORANDUM DECISION AND ORDER – 12

this reliance in the form of litigation expenses, costs for protecting the property, the threatened loss of his residence, financial pressure, and lost opportunity to make informed decisions about preventing the foreclosure sale.

Defendants correctly note that promissory estoppel does not apply in this case because the subject matter of Seifert's claim is governed by written contracts. Even if that were not the case, the Court finds Seifert's reliance on Defendants' conduct as a promise against initiating foreclosure to be unreasonable: the essence of Seifert's claim is that the loss-mitigation process would be open until August 15 and that somehow Defendants were in the wrong for scheduling the foreclosure sale months later in October. It is unclear why it would be reasonable for the Defendants to foresee Seifert's reliance on these dates, as Seifert himself concedes that the foreclosure sale was not scheduled to occur until nearly two months after the loss-mitigation offer closed. In any event, the Court finds this claim lacks merit and thus fails.

### 8. Equitable Accounting Claim (Count 9)

"Equitable claims will not be considered when an adequate legal remedy is available." *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.*, 765 P.3d 509, 514 (Idaho 2003) . Further, "[w]hen parties enter into an express contract, a claim based in equity is not allowed because the express contract precludes enforcement of equitable claims." *Id.*

Seifert's equitable claim concerns the crediting of his partial payment to the loan balance and his desire to have the account corrected as he believes Defendants' refusal to apply the partial payment was in error.

Defendants argue Seifert is barred from making this claim because he has adequate

MEMORANDUM DECISION AND ORDER – 13

legal remedies. Further, Defendants state that "[t]o the extent [Seifert] contends Nationstar misapplied the [partial payment], that dispute sounds in breach of contract," and Seifert would have the opportunity to seek damages were he to convince the Court a breach occurred. Dkt. 20, at 19.

The Court concurs with Defendants on this count. As there was an express contract between the parties, and because Seifert has adequate legal remedies, equitable relief is not appropriate here. Accordingly, Seifert's equitable accounting claim fails.

### 9. *Declaratory Relief Claim (Count 8)*

"The Declaratory Judgment Act does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). A declaratory relief claim derives its viability from the substantive claims a plaintiff brings, and when the substantive claims fail, so too does the declaratory relief claim. *Id.*

The substantive claims upon which Seifert bases this claim for declaratory relief are, as explained above, all without merit. As the Declaratory Judgment Act does not constitute an independent cause of action, this claim fails.

### V. CONCLUSION

Seifert's initial Complaint was extremely overlong and contained overbroad allegations against the Defendants. While his Amended Complaint is significantly shorter in length, he still fails to allege any viable causes of action and instead engages in vague and conclusory pleadings that lack factual or authoritative legal support. Indeed, Defendants have provided affirmative explanations for why Seifert's claims fail. Where

MEMORANDUM DECISION AND ORDER – 14

Seifert's arguments lack support, Defendants' arguments against each claim are well-founded in substantive legal authority.

The Court recognizes that Seifert is a pro se plaintiff. That said, Seifert already received a chance to amend (and specific instructions on how to effectively do so in order to avoid dismissal) from the Court. Even still, rather than crafting arguments that are supported by the law, Seifert declined to cite *any* cases that support his propositions and instead listed and re-listed the same factual allegations in apparent hopes that the Court would decide that was sufficient.

Because the allegations in Seifert's Amended Complaint are vague, conclusory, and unsupported (and, in some cases, *contradicted* by the facts), his Amended Complaint is DISMISSED WITH PREJUDICE. Further leave to amend will not be permitted.

## VI. ORDER

The Court **HEREBY ORDERS**:

1. The Nationstar Defendants' Motion to Dismiss (Dkt. 20) is GRANTED.

2. Nationstar Defendant's Motion to Take Judicial Notice (Dkt. 21) is GRANTED.

3. Seifert is DENIED leave to further amend.

4. This case is CLOSED.

DATED: July 10, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER – 15